# Bigley et al. *versus* Jones, Trustee.

1. The lands of a decedent were sold by order of court in proceedings in partition, and purchased by the husband of one of the heirs entitled to participate, who paid the purchase money except such portion as his wife was entitled to receive; this she released to the Master who made a deed to the husband alone. *Held*, that a trust resulted in favor of the wife to the extent of her interest in said real estate.

2. When real estate is held by a title which is regular on its face, a *bona fide* mortgagee thereof or one claiming title under such mortgagee, is not liable to be affected by any secret trust or equity if he be without notice of it; but if notice of it be given by the *cestui que trust* to the agent or the attorney of the mortgagee examining the title of said real estate prior to the execution of the mortgage, it is such notice of it to the principal as will bind him.

3. Partition is made of lands of tenants in common, when their possession is common; ejectment is the remedy when the possession of one is adverse to the others. A tenant in common is therefore not estopped from bringing an action of ejectment against one in possession holding adversely, by the dismissal of his bill for partition of the same real estate against the same person.

4. Where binding instructions are given to the jury to find for the plaintiff, the Supreme Court in a writ of error will assume that the evi-

dence adduced by the defendant is true, and also the truth of every fact which may be fairly inferred therefrom.

October 29th, 1886.    Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny county* : Of October Term 1886, No. 76.

Ejectment by E. P. Jones, trustee of the Smithfield Savings Bank, against Peter Bigley and Sarah Bigley for a lot of land in Penn township, Allegheny county.   Plea, not guilty.

The facts of the case as they appeared on the trial sufficiently appear in the opinion of the Supreme Court.

The following is the general charge of the court, WHITE, J. :

As intimated to counsel, I desired to get the verdict of the jury on the question of fact, whether actual notice of Mrs. Bigley's claim to the one-fifth was actually given to W. C. Friend, as attorney for the bank, before the bank advanced the money on the mortgage, reserving the questions of law, among which is that, whether notice to Mr. Friend was notice to the bank.   But on reflection I find that cannot be done. The better way is to instruct you that under the evidence your verdict should be for the plaintiff.   Then, on a motion for a new trial, we can carefully consider the questions of law involved.   (First assignment of error.)

Verdict for the plaintiff against Sarah Bigley, and judgment thereon, whereupon the defendants took this writ and filed the following assignments of error :

1. The charge of the court above set out.

2. The refusal to receive the following testimony.

Defendants' counsel proposes to prove by the witness on the stand that Mr. Morange was merely his agent for the purpose of raising this money.   That he went to him (Morange) about getting the money and that Mr. Morange went to the Smithfield Savings Bank and there got the money, and that he (Morange) was merely the agent of Bigley in taking that mortgage, and had no interest in it other than as his agent. And further, that Mr. Morange knew, from what Mr. Bigley told him, of the existence of Mrs. Bigley's one fifth interest in the property at the time the mortgage was made.

Objected to as incompetent and irrelevant, and that the fact alleged that Mr. Morange was the agent of this man is not shown by the record, in fact, the record shows that Morange was the mortgagee, and it does not appear that the existence of any confidential relation was communicated to the bank or to Mr. Jones.   Furthermore, that Mr. Morange, a party to the record, is dead ; that witness being also a party to the record

and interested in the case, is incompetent to testify to the facts proposed.

BY THE COURT.—Objection sustained.

3. The admission of the following testimony:

" Q. State whether you, as an executive officer of the bank, president of the board at that meeting when they passed upon the purchase of this mortgage, had any knowledge of the defective title in Mrs. Bigley.

"Objected to as incompetent and irrelevant. And that if there was notice to their attorney, we allege it was notice to them.

" BY THE COURT.—Objection overruled."

4. The admission of the following offer:

Plaintiff's counsel offers in evidence the record in the suit in equity of Sarah Bigley against E. P. Jones and Sarah Bigley, in the Court of Common Pleas of Allegheny county, No. 1, at No. 545, June Term, 1887, bill filed April 28th, 1877, for the purpose of showing that Sarah Bigley in 1877, in her bill thus filed, after plaintiff had acquired title at sheriff's sale upon the mortgage debt, did not allege notice or knowledge to the plaintiff, Jones, trustee, or to the bank that he represented, of the existence of the alleged title of Mrs. Bigley to the one-fifth part of this land. And that her bill was dismissed and a decree entered in favor of defendants. The case was taken to the Supreme Court by appeal and *certiorari*, and the decree affirmed by that court. This bill, being sworn to by Mrs. Bigley before Esquire Reinhart, and identified by her attorney, Mr. Fitzimmons, as the bill.

Objected to as incompetent and irrelevant, and that being a mere bill in equity for a partition, it could not be expected to enforce or have the power of an ejectment. And that it was not necessary therein to set forth the particulars of the title of Mrs. Bigley.

BY THE COURT.—Objection overruled.

*A. G. Smith* and *Fitzsimmons (Robb* with them), for plaintiff in error.—The first assignment of error raises the important question in this case, viz: whether the notice to W. C. Friend, Esq., the attorney of the plaintiff below, of the title of Sarah Bigley, was sufficient as notice to the principal.

"Notice to an agent is equivalent to notice to the principal:" Wade on Notice, sec. 672, p. 304.

"Notice to attorney is notice to client; the client is bound by notice received by the attorney:" Wharton on Agency, sec. 589.

"Notice of a prior encumbrance to an agent is notice to the principal:" Astor *v.* Wells et al., 4 Wheaton, 466; Reed's

[Bigley et al. v. Jones.]

Appeal, 10 Casey, 209; Smith's Appeal, 11 Wright, 140; Mehan v. Williams, 12 Id., 238; Smith v. Ayer, 101 U. S., 320; May v. Le Claire, 11 Wall, 217; Lewis v. Bradford, 10 Watts, 67; Bracken v. Miller, 4 W. & S., 102; Hepburn v. McDonald, 17 S. & R., 385; Hood v. Fahnestock, 8 Watts, 489; Barrios v. McClenton, 3 P. & W., 67; Jacques v. Weeks, 7 Watts, 271; Jamison v. Dimmick, 95 Penna. St., 52; Ross v. Baker, 22 P. F. S., 190; Houseman v. Girard Mutual Building and Loan Association, 31 Id., 256.

Contracts directly between husband and wife will be sustained in equity if they are reasonable and not prejudicial to creditors. This may be done without the intervention of a trustee: Coates v. Gerlach, 8 Wr., 45; Penna. Salt Manfg. Co. v. Neel, 4 P. F. S., 17; Crawford's Appeal, 11 Id., 52.

" A parol sale without delivery of possession would be sustained where supported on the trial by the oath of the vendor:" Christy v. O'Brien, 2 H., 248; Woods v. Farmarie, 10 Watts, 195; Aiken v. Young, 12 Pa. St., 15; Christy v. Barnhart, 14 Id., 260; Meranaille v. Silverhorn, 1 Grant, 410; Waterman on Specific Performance of Contracts, sec. 272–292, page 373 and notes.

" It is well settled equity law that courts of equity will enforce specific performance of a contract within the statute of frauds when it is confessed in the answer of the defendant. The reason is that the statute is designed to guard against fraud and perjury, and in such a case there can be no danger of that sort; it is not within the mischief intended to be guarded against by the statute:" 2 Story on Equity, sec. 755–770; London & Birmingham Railroad Co. v. Winter, 1 Craig & Phillips, 57; Price v. Dyer, 17 Ves., 356; Harrisburg Bank v. Tyler, 3 W. & S., 373; Hauser v. Lamont, 3 P. F. S., 317; Haker v. Hallobaugh, 15 Ark., 322; Woods v. Lend, 11 Ohio, 435.

The bill filed by Mrs. Bigley was a partition bill, and the answer of the defendant denied the right of partition. The court by decree dismissed the bill, deciding substantially that a denial of the right of partition ousted the jurisdiction of the Court of Equity to make partition, and thereby remitted the. parties to their action of ejectment to settle the question of title: Kelsey v. Murphy, 2 Casey, 84; Saylor v. Hecks et al., 12 Id., 394; Williams v. Rew, 12 P. F. S., 122; Westcott v. Edmonds, 18 Id., 34.

" An adverse holding by one tenant in common for any length of time, however short, previously to the institution of an action of partition will bar a recovery in such form of action:" Law v. Patterson, 1 W. & S., 185; Longwell v. Bentley, 3 Grant, 177; Homer's Appeal, 55 Pa. St., 337; McClure

4 AMERMAN—33

*v.* McClure, 2 Harris, 137; Goundee *v.* Northampton Water Co., 7 Barr, 238; Ross *v.* Pleasants, 2 Harris, 168; Colton *v.* Smith, 11 Pick., 311.

**A. M. Brown** (*John S. Lambie* and *E. P. Jones* with him), for defendant in error.—The sale in proceedings in partition was regular, it was a judicial sale. The various matters necessary to authorize the sale have all been made the subjects of judicial inquiry and determination. All errors should have been corrected by appeal or some other appropriate proceeding. Not being so corrected the parties have acquiesced in and ratified it, and they cannot impeach it in any collateral manner to defeat the purchaser's title: Goudy *v.* Shank, 8 Ohio, 417; Rogers *v.* Tucker, 7 Ohio St., 427; Stokes *v.* Middleton, 4 Dutch., 32; Lefever v. Laraway, 22 Barbour, 167.

A person, with whose privity and under whose direction a marshal's sale is made, is estopped from controverting the sale so far as relates to any interest he is possessed of: Willing *v.* Brown, 7 S. & R., 467.

She is estopped by her receipt given to the Master. A sale in partition converts a married woman's share into personalty: Gutshall *v.* Goodyear, 16 W. N. C., 106.

She had a right to execute and deliver the receipt and it was in proper legal form: Powell's Appeal, 10 W. N. C., 485; Brown's Appeal, 9 Id., 329; Haffey *v.* Carey, 23 P. F. S., 431; Bond *v.* Bunting, 28 Id., 210; Fryer *v.* Rishell, 3 Norris, 521.

Where a person represents the title to be in a certain way and it turns out not to be so, yet as against the person making the representation it shall be as represented: Schultze *v.* Diehl, 2 P. & W., 277; Miller's Appeal, 3 Norris, 391; Buchanan *v.* Moore, 13 S. & R., 306; Lewis *v.* Carstairs, 5 W. & S., 209.

It would be a fraud to permit Mrs. Bigley to controvert this receipt as to innocent parties; and, therefore, as to them she is estopped: Commonwealth v. Moltz, 10 Barr, 527.

The notice must be precise, in order to effect a subsequent purchaser: 1 Story's Eq. Jur., sec., 400; Hottenstein *v.* Lerch, 8 Out., 461; Wyatt *v.* Burwell, 19 Vesey, 439.

In order to affect the bank with notice, Mr. Friend must have acquired his information in the same transaction, and in the prosecution of his inquiries as to the title: Bracken *v.* Miller, 4 W. & S., 102; Houseman *v.* Girard Mutual Building and Loan Association, 81 Pa. St., 256; George Peabody Building Association *v.* Houseman, 34 Leg. Int., 5.

Knowledge of a fact possessed by an attorney at the time of his retainer is not sufficient to affect his client: Smith's Appeal, 47 Pa. St., 128; Mehan *v.* Williams, 48 Id., 238. Nor is

knowledge acquired in an independent transaction when acting for another person : Hood v. Fahnestock, 8 Watts, 489 ; Martin v. Jackson, 27 Pa. St., 504.

If Mrs. Bigley had any title after the sale in partition it was equitable, and Courts of Equity have power to decree partition in such cases, even though the equitable title be disputed. Courts of Equity have broader powers in this respect than the Orphans' Court or the Courts of Law.

The difficulty under which the complainant labored, at law, in proving his title, is in equity obviated by a discovery.

If the disputed titles are equitable, courts of Equity will exercise jurisdiction to settle them, and will then grant final relief by way of partition under the same bill : 3 Pomeroy's Equity Jur., 415 ; Freeman on Co-tenancy and Partition, pages 643 and 644.

The difference between a judgment and writ of partition at common law, and a partition by decree in chancery as it affects the title is, that the former operates by way of delivery of possession and estoppel, while in the latter the transfer of title can be compelled by the court : Gay v. Purpart, 106 U. S., 679.

An equitable estate is sufficient in Pennsylvania to support the action of partition, even though the equitable title be in dispute.

In Stewart v. Brown, 2 S. &. R,, 461, the plaintiff alleged that the purchase of the land was made under an agreement between himself and defendant, that each should be one half owner, and that the defendant took title to himself. The agreement was denied by defendant. The court held that an action in partition could be maintained : Willing v. Brown, 7 S. & R., 469 ; Longwell v. Bentley, 11 Harris, 99.

Mr. Justice CLARK delivered the opinion of the court, November 8th, 1886.

In this case, binding instructions were given to the jury to find for the plaintiff ; this being so, we must assume that the evidence adduced by the defendants is true ; we must also assume the truth of every fact which may be fairly inferred therefrom.

Sarah Bigley testifies in substance, that prior to the sale of her father's estate under the order of the court in partition, on the 25th January, 1866, she had a distinct understanding, or agreement with her husband to this effect : that if he became the purchaser of the property, she would retain her interest in it. She says, she preferred the land before the money, because it was her father's land, and that her husband was relieved of paying the money by her holding the land. " He agreed." says Mrs. Bigley, " that I was to have one fifth, and he wasn't

to pay any money for that; I was to hold my own; he was to buy it in, and I was to hold the fifth."

This, she says, was the understanding before, at the time of, and always after the sale.

Peter Bigley testifies, that prior to the sale he and his wife made an agreement, that if he would buy the property, she would take her share in the land, and that he went on and bid the property in, with that understanding.

The deed was made to Peter Bigley, and he and his wife went into the possession. The share of Mrs. Bigley in the estate of her father, although released to the Master, was never paid to her; the testimony shows that it went into the purchase of the land which was conveyed to Bigley; it was applied as part of the purchase money, according to the agreement which existed between Bigley and his wife.

We agree with the plaintiffs in error, that the title of all the heirs, *qua* heirs, in the real estate of the decedent, was extinguished by the Orphans' Court sale, and the delivery of the sheriff's deed; that the interest of Sarah Bigley was thereby converted into personalty; that she had a right to release her share to the Master in relief of her husband's purchase; and, that her claim in the proceeds of the sale was, by the release, satisfied.

But, there is evidence to show that the share of Sarah Bigley, thus reduced to personalty, actually went into the purchase of this land; that it was applied as purchase money at the time of the conveyance; that it was not advanced as a loan, or as a gift to her husband, but as her own; not as a general contribution, but the contribution of a specific, definite sum to procure a correspondent interest, or aliquot part of the estate.

Now, it may be conceded, that the alleged agreement, between Bigley and his wife, as a means, *per se*, of making title in her was of no consequence, but if at the time of the conveyance she paid a part of the purchase money under it, for a proportionate interest in the purchase, under the circumstances stated, a trust would certainly result in her favor to the extent of the purchase money thus paid. The agreement is nothing, except as it discloses the intention of the parties at the time. The trust results from the acts, and not from the agreement of the parties, or rather, perhaps, from the acts accompanied by the agreement.

The presumption is, in the absence of all rebutting circumstances, that one who pays the purchase money of land intends to become the owner of it, although as a matter of convenience, or through an arrangement of the parties for collateral purposes, the conveyance may be in the name of another. The same rule applies if several persons pay the consideration and take

the title to one of their number; Morey *v.* Herrick, 6. Harris, 129; Duffield *v.* Wallace, 2 S & R., 521; Perry on Trusts, sec. 132. If the parties contribute unequally, the trust results to each of them in proportion to the amount paid by each; Hill on Trustees, 4th Am. ed., 149.

Thus, in Harrold *v.* Lane, 3 P. F. S., 268, the lands of a decedent were sold by order of the Orphans'· Court, under proceedings in partition to one of the heirs; an ejectment, having been brought by the purchaser, the defendant, another of the heirs, gave evidence that an arrangement had been made that the purchase should be for four of the heirs; that before the conveyance, she had paid the purchaser a sum of money which, with her interest in the estate, would pay her one fourth; and it was held that this was sufficient to establish a resulting trust in her favor for the one fourth of the land, unless negatived in the belief of the jury.

To establish a trust by parol, the evidence must be full, clear and convincing; Lloyd *v.* Farrell, 4 Casey, 419; Farrell *v.* Lloyd, 19 P. F. S., 247; McGinity *v.* McGinity, 13 P. F. S., 39. We are clearly of opinion, however, if the facts be as stated by the defendant's witnesses, that a resulting trust has been established.

But the plaintiff below, was a purchaser of the lands in suit, at a sheriff's sale of all the right, title, interest and claim of Peter Bigley, in whose name was the recorded title; the sale was upon a *levari facias* on a mortgage dated February 1st, 1873, in $6,000, given by Peter Bigley to I. K. Morange, and by him negotiated and assigned to E. P. Jones, in trust for the Smithfield Savings Bank. When real estate is held by a title which is regular on its face, a bona fide mortgagee thereof, or one claiming title under such mortgagee, is not liable to be affected by any secret trust or equity if he be without notice thereof: Sweetzer *v.* Atterbury, 4 Out., 18. The assignee of a mortgage takes it discharged of the equities of persons not parties to it of which he has no notice; Mott *v.* Clark, 9 Barr., 399; Price *v.* Wood, 7 Casey, 142. So, the purchaser of a title, perfect on its face, for a valuable consideration takes it discharged of every equity of which he had no notice; Reed *v.* Dickey, 2 Watts, 459; Wightman's Appeal, 29 Pa. St., 280; Fillman *v.* Deven, 31 Id., 429.

This brings us to the second question in the cause: whether or not the plaintiff, at the time the mortgage was assigned and at the sheriff's sale, had notice of the secret equity of Sarah Bigley.

It is not disputed that the mortgage to Morange, was made with the express design of having it negotiated for a loan of money. Morange was a broker, and was the agent of Bigley

for the purpose. It appears, too, that prior to the assignment of the mortgage by Morange, to the Smithfield Savings Bank, W. C. Friend, Esquire, the attorney of the bank, was directed by the bank to make an examination of the title; that whilst Friend was actually engaged in making this examination, James Fitzimmons, Esquire, the attorney of Sarah Bigley, gave him notice of the trust which had resulted to her from payment of the purchase money.

Mr. Fitzimmons says that either Mr. or Mrs. Bigley spoke to him in reference to the title of Mrs. Bigley, in connection with the fact that Bigley was borrowing money on this real estate, and told him to look after her title, and that acting upon this employment he gave the matter his attention. He says:—" I afterwards heard incidentally, and I am not sure how, that the Smithfield Savings Bank was taking this mortgage and loaning the money; I made it my business to see Mr. W. C. Friend, then a member of the bar, and saw him. I said you are examining Bigley's title for a mortgage. Yes, he said he was, and told me the bank was going to take the mortgage; I then said to him to take care, that Peter Bigley only had four fifths in the tract, his wife having one fifth. I told him that there was an equity proceeding some years before, and that an arrangement was made at that time that she was to retain her one fifth interest in that land instead of taking the money from Mr. Bigley, and that the arrangement was before the partition proceedings were commenced, and during the time they were in action, and that they afterwards always considered among themselves that she still held her one fifth interest; then I told him, furthermore, that he had never paid her anything on account of her interest, and that she had still retained possession of it, and was then in possession of her interest in that land."

Mr. Fitzsimmons further states, that on the occasion of the sheriff's sale he gave notice to the bidders, of Mrs. Bigley's title to the one fifth interest in the land, and warned bidders that if they should purchase the property they would only take four fifths interest therein.

If the statement of Fitzsimmons is accepted, then without doubt the Smithfield Savings Bank and E. P. Jones, trustee, had full notice of Mrs. Bigley's title; they were bound by the notice to Friend, who was their attorney and agent in this particular transaction, and who gained the information in the very matter in which he was employed; this was notice to his principals: Reed's Appeal, 10 Casey, 209; Brachen *v.* Miller, 4 W. & S., 102; Houseman *v.* Girard, B. & L. Asso., 31 P. F. S., 256.

As the Smithfield Savings Bank thus had notice of Mrs.

[Birney's Appeal.]

Bigley's equity, not only at the time of the assignment of the mortgage, but also at the time of the sale, they cannot be considered bona fide purchasers for value.

Nor was Sarah Bigley estopped by the decree of the Court of Common Pleas, No. 1, dismissing her bill in equity filed to No. 545, June T., 1877. The prayer of that bill was in the alternative—that Peter Bigley, or E. P. Jones, should be directed to pay to her one fifth of the purchase money for which the land was sold by the Master, or, that partition be made and her one fifth part of the land be set apart to her in severalty. It is plain that the court had no jurisdiction to grant the first prayer, and the second was rendered impracticable by the denial of the complainant's possession and title. In the bill for partition, she demanded one fifth of the land to be set apart to her in severalty; but, to this she may not have been entitled, and yet have a right to recover in ejectment one fifth undivided. Partition is made of lands of tenants in common, when their possession is common; ejectment is the remedy when the possession of one is adverse to the other. The dismissal of the partition bill, would not necessarily have any conclusive effect upon her claim in ejectment. The Smithfield Savings Bank was entitled to the possession of Peter Bigley, the defendant in the execution, and in the answer, the bank claimed that his possession was of the whole land as an entirety; the bank's claim of possession through Bigley was, therefore, adverse to Sarah Bigley, and ejectment, whether by the bank whilst she remained in possession, or by her after she went out, was the appropriate remedy for the determination of her rights; Law v. Patterson, 1 W. & S., 185; Longwell v. Bentley, 11 Harris, 99.

The court erred in taking the case from the jury, and in giving binding instructions to find for the plaintiff.

The judgment is therefore reversed, and a *venire facias de novo* awarded.